In the Matter of MCM, INC., t/a
Alyson's Restaurant, Debtor.

In the Matter of MYBEV
ASSOCIATES, Debtor.

Bankruptcy Nos. 88–296, M–88–96,
88–297, M–88–97.

United States Bankruptcy Court,
D. Delaware.

Dec. 23, 1988.

Eduard F. von Wettberg, III, Morris, James, Hitchens & Williams, Wilmington, Del., for plaintiff.

Laura Davis Jones, Young, Conaway, Stargatt & Taylor, Wilmington, Del., for unsecured creditors committee.

Stephen W. Spence, Phillips & Snyder, Wilmington, Del., trustee.

Peter J. Walsh, Bayard, Handelman & Murdoch, Wilmington, Del., for debtor/defendant.

## BENCH DECISION

HELEN S. BALICK, Bankruptcy Judge.

MCM, Inc., t/a Alyson's Restaurant and Mybev Associates each filed Chapter 11

cases on June 3, 1988. MCM is a corporation formed to operate a restaurant that Mybev, a real estate holding company, agreed to construct under a lease and construction agreement with Ruth Hill on property at 1800 Naamans Road, New Castle County, Delaware. The major stockholder of MCM is Michael Moskowitz who is a general partner of Mybev along with his former wife Beverly and NuGelt, Inc. NuGelt is the operating corporation of another Alyson's Restaurant located on Mybev's property on the Kirkwood Highway, New Castle County, Delaware. Wilmington Savings Fund Society provided funds for the construction of the restaurant on Naamans Road. These loans were in default before the bankruptcy filings. WSFS has moved in each of the cases for relief from the automatic stay provisions of § 362(a) of title 11, United States Code, to proceed against property located at 1800 Naamans Road.

Section 362(d) provides that relief shall be granted either (1) for cause, including lack of adequate protection of an interest in property OR (2) if the debtor does not have equity in the property and it is not necessary to an effective reorganization. The party requesting relief has the burden of proof on the issue of debtors' equity. Here, WSFS has that burden. Those opposing relief have the burden of proof on all other issues, that is, that WSFS' property interest is adequately protected or that it does not have an interest, or that the property is essential to an effective reorganization. That burden falls upon the Trustee and the Creditors' Committee of the MCM estate. The debtors MCM and Mybev earlier concluded they could not make it at the Naamans Road location and closed the business leaving them without a valid basis for opposing the motion.

Only WSFS presented evidence. Thus, the amount of debt due on two WSFS' loans is not in dispute. These loans in the amount of $4,000,000 and $750,000 closed on April 1, 1987 and August 13, 1987, respectively. The total amount due as of December 14 is $5,471,094.09. The respective per diem interest is $1,388.88 and

$260.41 for a total daily interest charge of $1,649.29.

The paper involved in connection with these loans is enormous so I refer only to the principal documents that WSFS holds as security.

First, on the $4,000,000 loan the documents are dated April 1, 1987. They are:

1. Mortgage and security agreement of Michael Moskowitz, Beverly Moskowitz and NuGelt t/a Mybev on two tracts of land. Tract A is Mybev's interest and estate under a lease and construction agreement in the Naamans Road property and Tract B is the Kirkwood Highway property containing approximately .9619 acres conveyed to Mybev by deeds of Arlene Czerwinski et al. and Stanley Czerwinski, et al.

2. Accompanying bond executed by the Moskowitzes individually and as general partners along with NuGelt.

3. Guarantee bond and warrant signed by Michael Moskowitz, Beverly Moskowitz, Carolyn Durbin, NuGelt and MCM, Inc.

4. Financing statement of Mybev, the Moskowitzes and NuGelt individually covering the entire contents of building or buildings located on the Naamans Road property.

5. Assignment of lease from Michael Moskowitz, Beverly Moskowitz and NuGelt, individually and trading as Mybev, for the premises at Naamans Road.

Second, on the $750,000 loan, there are:

1. Mortgage and security agreement of Michael Moskowitz, Beverly Moskowitz, and NuGelt t/a Mybev dated August 13, 1987, on the same tracts described in the April 1 mortgage. This mortgage is accompanied by a bond executed by the Moskowitzes and NuGelt individually and as general partner, Carolyn Durbin and MCM, Inc.

2. Mortgage of Michael Moskowitz and Beverly Moskowitz dated August 13 on their residence at 2415 Kingman Drive, Wilmington.

3. Mortgage of Mybev, Michael Moskowitz and Beverly Moskowitz dated August 13 on property conveyed to Mybev

by Arlene Czerwinski et al. and property conveyed to Michael Moskowitz and Beverly Moskowitz by William and Helen Webb.

4. Financing statement of Mybev, the Moskowitzes and NuGelt individually dated August 13, 1987, covering entire contents of building or buildings located on the Naamans Road property.

Among the numerous documents relating to the April closing is a landlord's consent of Ruth Hill dated March 31, 1987, consenting to a sublease between Mybev and MCM dated as of March 1, 1987. Until bankruptcy Mybev had no bank account and its rental payments to Ruth Hill were made directly by MCM. The proceeds of the loans were credited to MCM's deposit account at WSFS.

On July 30, 1987, WSFS subordinated the lien of its $4,000,000 loan against Mybev's Kirkwood Highway real estate to the lien of First Federal Savings Bank of Delaware. First Federal loaned Mybev and NuGelt $250,000 and $1,600,000 on April 13, 1987 and took as security a $1,800,000 mortgage from Mybev on the Kirkwood Highway property and a financing statement from NuGelt on all inventory, machinery, furniture, fixtures and equipment.

First Federal's loans carrying a total daily interest of $553.42, were in default before the bankruptcy filing. On December 14 the total amount due was $1,846,915.83.

The real estate and personal property at both locations were appraised at fair market value and liquidation value. The fair market value of the leasehold interest in the Naamans Road real property is $3,425,000. The fair market value of the restaurant, bar fixtures and equipment in place is $1,203,000 for a total fair market value of $4,628,000. The total fair market value of Kirkwood Highway, which includes land and restaurant in place, is $1,499,400. The fair market value of the Moskowitz' residence at 2415 Kingman Drive is $175,000.

When the debtors ceased doing business at Naamans Road on November 10, WSFS undertook to protect its interest by hiring a guard service, changing locks, and paying past due rental to Ruth Hill, late real es-

tate taxes to New Castle County and an insurance premium for fire, extended coverage and liability insurance. The payments made as of December 14 total in excess of $172,500. Estimated monthly expenses to preserve and protect the property are $20,000 to $25,000.

In addition to the mortgages of record, there are approximately 20 mechanic's lien actions pending in Superior Court. Some of these claimants assert lien superiority as to one or both of the WSFS mortgages. There are other claimants asserting a superior interest to WSFS in virtually all items of machinery and equipment at the Naamans Road restaurant with the exception of pots, pans, china, kitchen utensils and silverware.

Neither Mybev nor the Trustee for MCM have offered WSFS any form of adequate protection of its interest in property. Neither debtor has any funds nor has the Trustee any definite possibilities for a plan proposal.

The Trustee and Creditors' Committee contend that WSFS has not established a security interest in MCM's leasehold interest and that the property is essential to an effective reorganization. WSFS. contends that MCM's leasehold interest was either rejected or that the equities require its subordination to WSFS' mortgage.

It is clear that WSFS is undersecured at the Naamans Road site or, in other words, the debtors lack equity. The total fair market value of the three properties including personalty covered by WSFS' mortgages and financing statements is $6,302,400. Included in that figure is:

| | |
|---|---|
| Naamans Road | $4,628,000 |
| Kirkwood Highway | $1,499,400 |
| Residence | $ 175,000 |
| | $6,302,400 |

Having subordinated its $4,000,000 mortgage to First Federal's lien and First Federal's loan balance being in excess of $1,846,915.83 which is more than the fair market value of the Kirkwood Highway property, the value of that property cannot be considered in determining the fair market value of property in which WSFS has a

security interest. Thus, from $6,302,400 we subtract the fair market value of Kirkwood, $1,499,400, which leaves collateral having a value of $4,803,000 against a balance due in excess of $5,471,000. Much has been made of a Florida condominium worth $175,000 but there is nothing in the record to reflect any security interest in that property. Furthermore, even if there was, WSFS would still be undersecured. Note must be taken that this computation has ignored the mechanic's lien actions and other claimants who may or may not have superior claims to part of the property WSFS claims as its collateral. To the extent that any of those claimants are found to be in a superior position, WSFS suffers an additional reduction in the value of its collateral.

The Trustee and Creditors' Committee argue that since the sublease between Mybev and MCM predates WSFS' mortages and WSFS did not seek any lien against property interests of MCM, it has no state law rights against MCM's leasehold interest. This argument must be rejected.

The sublease between Mybev and MCM terminated by operation of law. Under § 365(d)(4) of title 11, United States Code, a lease of non-residential real estate is deemed rejected if within 60 days after the bankruptcy filing, no action is taken to assume or reject the lease or to extend the time within which such action may be taken. MCM took no action nor is there anything in the record to support a waiver argument.

Thus, WSFS is entitled to relief from stay under § 362(d)(1) for cause. That cause being that WSFS' interest in the Naamans Road property is not adequately protected.

Section 362(d) is written in the disjunctive and a ruling under one or the other of its subsections in favor of a movant is all that is required for relief.

However, the parties have directed argument to subsection (d)(2) as well so I will address the elements necessary for relief under that subsection. Subsection (d)(2)(A) has been satisfied by WSFS in that it has shown the debtors do not have equity in the Naamans Road property. This fact would not necessarily defeat a request for relief if the property was necessary to a reorganization and there was a reasonable possibility of a successful reorganization within a reasonable time. There is no question but that the property is essential to a reorganization but the possibility of a successful or effective reorganization is highly speculative. Neither the Trustee nor the Creditors' Committee can be faulted for this. The Trustee has been in possession a very short time and has not had much opportunity to come forward with a business plan; however, the Trustee has no funds to finance the property through the period of a sale for the purpose for which the property is best suited, a restaurant, let alone any attempt on his part to redevelop the property or to interest redevelopers for other uses. Therefore, the combination of lack of equity in the debtors and their inability to show any likelihood of an effective reorganization requires that WSFS be granted relief under § 362(d)(2).

Section 362(d) permits the court to condition any relief from stay. In that respect, WSFS has volunteered that if successful on its motions, it will not dispose of machinery and equipment on the premises in violation of the rights of adverse claimants, including the Trustee of MCM.